DOWD, WARDEN, ETC. *v.* GRAZER.

[No. 29,030. Filed December 15, 1953. Rehearing denied January 29, 1954.]

*Edwin K. Steers,* Attorney General, and *Carl M. Franceschini,* Deputy Attorney General, for appellant.

*James C. Cooper,* Public Defender and *Richard M. Givan,* Assistant Public Defender, for appellee.

BOBBITT, J.—On his application for writ of habeas corpus appellee was discharged from the custody of appellant as Warden of the Indiana State Prison.

The application recites that appellee is held on a commitment issued by the Elkhart Superior Court on December 19, 1939; that on said date appellee was found guilty of the offense of resisting an officer with intent to commit bodily injury and of being an habitual criminal; that he was sentenced to the Indiana State Prison for one year for the first offense and to life imprisonment on the habitual criminal charge. Appellee asserts that his restraint is illegal in that the court was without jurisdiction to sentence him on the habitual criminal charge because the Habitual Criminal Act of Indiana[1] is unconstitutional and void as being in violation of Art. I, §37 of the Indiana Constitution and the Thirteenth Amendment to the Constitution of the United States.

Appellant contends that the constitutionality of a statute may not be tested in a habeas corpus proceeding.

1. Acts 1907, ch. 82, §1, p. 109, being §9-2207, Burns' 1942 Repl.; Acts 1907, ch. 82, §2, p. 109, being §9-2208, Burns' 1942 Repl.

Insofar as the record before us discloses no appeal was taken from the judgment entered by the Elkhart Superior Court on December 19, 1939, nor have we otherwise been advised that any appeal was taken by appellee from the judgment by which he was committed to the custody of appellant.

If appellant is correct in his position, we need not decide the constitutionality of the Habitual Criminal Act. In view of this situation we shall first consider appellant's contention that the constitutionality of a statute may not be first raised in a habeas corpus proceeding.

Appellee is here attempting, by collateral attack, to have a statute declared unconstitutional in order to establish that the judgment by which he is restrained is void.

The identical question here presented was before this court in *Koepke* v. *Hill* (1901), 157 Ind. 172, 60 N. E. 1039.

Appellee Hill was convicted for the violation of a city ordinance. In his petition for a writ of habeas corpus he alleged " 'that his restraint is illegal in this, that said pretended ordinance [under which he was restrained] is repugnant to the Constitution of the State of Indiana and to the Constitution of the United States, and is beyond the authority of the city of Evansville. . . .' "

Appellant in that case asserted that the question of the proper construction of the various constitutional provisions, and of the statute conferring power upon cities, and of the ordinance, was not open to investigation in habeas corpus proceedings.

At pages 176, 177 and 178 of 157 Ind., this court said:

"In this State, however, the holdings have been to the effect that, whenever a court is confronted

with a question which it has a right to decide correctly, its erroneous judgment will not be subject to a collateral attack, irrespective of whether the mistake of law concerned the common, or statutory, or constitutional law. *Wright* v. *State,* 5 Ind. 290, 61 Am. Dec. 90; *Cassell* v. *Scott,* 17 Ind. 514; *Wentworth* v. *Alexander,* 66 Ind. 39; *Lowery* v. *Howard,* 103 Ind. 440; *Willis* v. *Bayles,* 105 Ind. 363; *McLaughlin* v. *Etchison,* 127 Ind. 474, 22 Am. St. 658; *Board of Guardians* v. *Shutter,* 139 Ind. 268, 31 L.R.A. 740; *Jones* v. *Cullen,* 142 Ind. 335; *Hiatt* v. *Town of Darlington,* 152 Ind. 570; *Pritchett* v. *Cox,* 154 Ind. 108; *Winslow* v. *Green,* 155 Ind. 368; *Webber* v. *Harding,* 155 Ind. 408; *Peters* v. *Koepke,* 156 Ind. 35.

. . . .

"The common law, the statutes, and the constitutions make up the law of the land. They are all law. On principle, it is not perceived why a mistake in constitutional law should be visited with more serious consequences than a mistake in common or statutory law.

. . . .

"In this case an affidavit was presented to the police court of the city of Evansville, charging appellee with violations of a city ordinance. There was no other court of original jurisdiction in which the charge could be filed and determined. The court was in duty bound to act. It had to decide whether the facts stated made a case within the ordinance, and whether the ordinance was within the delegated legislative power of the city, and, if so, whether the ordinance and statute authorizing it conflicted with any provision of the Constitution. These were all questions of law, and if the court had jurisdiction to decide them correctly, it likewise had jurisdiction to decide them erroneously."

In *Cruthers* v. *Bray* (1903), 159 Ind. 685, 65 N. E. 517, quoting from *Platt* v. *Harrison,* 6 Iowa 79, 81, 71 Am. Dec. 389, 390, in considering the question as to whether an affidavit charged a public offense, this court, 159 Ind. at pages 686, 687, said:

" 'The argument is, that the ordinance was passed without authority of law, and was null and void. Whether it was or not, was a legitimate subject of inquiry by the magistrate, in the same manner as any other question which might be presented for his adjudication. And being determined by him, adverse to the position of the prisoner, his remedy was by appeal, or writ of error, and not by *habeas corpus*. It is not a case where a court has acted without having jurisdiction. On the contrary, the most that can be claimed is, that the magistrate *erred* in deciding that the ordinance was in force, and that the city had the power and authority to provide for the punishment of the offense. Such cases, we do not think, can be reviewed in this manner. The petitioner has a perfect, well defined, and complete remedy, in the regular and usual method of appeal. After conviction by a court having jurisdiction, though the conviction may be irregular or erroneous, the party is not entitled to this writ. The judgment and proceedings of another competent court, cannot be revised upon *habeas corpus*.' "

See also: *Tullis* v. *Shaw* (1908), 169 Ind. 662, 83 N. E. 376; *Baker* v. *Krietenstein, Sheriff* (1916), 185 Ind. 693, 114 N. E. 445; *Shideler* v. *Vrljich* (1925), 195 Ind. 563, 145 N. E. 881; *Stephenson* v. *Daly* (1928), 200 Ind. 196, 158 N. E. 289; *Goodman* v. *Daly, Warden* (1929), 201 Ind. 332, 165 N. E. 906.

The rule announced and followed in the foregoing cases has been the law in Indiana for more than fifty years, and we are not disposed to change it, even though the majority rule[2] is to the contrary.

A writ of habeas corpus cannot be used as a substitute for a writ of error or for an appeal. *Smith* v. *Hess, Sheriff* (1883), 91 Ind. 424, 428; *Shoemaker* v. *Dowd, Warden* (1953), 232 Ind. 602, 115 N. E. 2d 443, and cases there cited.

2. 167 A.L.R. Ann. (1) p. 522 for majority rule; and (2) p. 527 for minority rule.

The Elkhart Superior Court is a court of general jurisdiction and is a proper court in which to prosecute violations of the criminal laws of the state. The offense with which appellee was charged is within the class of offenses placed by law under its jurisdiction.

The affidavit charging appellee with being an habitual criminal was presented to the Elkhart Superior Court. It was one of two courts of original jurisdiction in Elkhart County in which such charge could be filed and tried. The record here does not disclose, nor have we been advised, that any court of competent jurisdiction had declared the Habitual Criminal Act to be unconstitutional either prior to the time of appellant's trial in the Elkhart Superior Court or prior to the time of the filing of his application for a writ of habeas corpus in the LaPorte Circuit Court. It was the duty of the Elkhart Superior Court to act. It had to decide whether the facts stated in the affidavit constituted an offense within the statute and whether the statute (Habitual Criminal Act) was in conflict with any of the provisions of the state or federal constitutions. Having the power to decide these questions, it could decide them correctly or incorrectly.

If the question of the constitutionality of the Habitual Criminal Act had been presented to the Elkhart Superior Court at the time of appellee's trial and that court had held the act unconstitutional, it would have had jurisdiction to render a judgment acquitting appellant. Must it not then follow that had the constitutionality of the statute been presented to the trial court and it had held the act constitutional, it would have had jurisdiction to render a judgment finding appellee guilty as charged in the affidavit? Can it be said that a court has jurisdiction to decide a question of law correctly but is without jurisdiction to decide the same question incorrectly?

The reason for the minority rule which Indiana has followed is ably stated by the Supreme Court of Ohio in *Yutze* v. *Copelan* (1923), 109 Ohio St. 171, 142 N. E. 33, 32 A. L. R. 1048 (affirming, (1923), 17 Ohio App. 461), at page 34 of 142 N. E., as follows:

"The basis of the reasoning underlying the opinions of those courts which hold that *habeas corpus* is a proper remedy to test the unconstitutionality of a statute rests upon the conclusion that if the statute or ordinance be unconstitutional the court is entirely without jurisdiction; that it is in effect the same as if an offense were charged under a statute which did not exist; that in either case the court would be powerless to act in any stage of the proceedings—in the issuance of process, in the trial of the cause, or in pronouncing judgment upon such void statute or ordinance. Most of the courts which so hold place reliance upon the dicta used by the various federal judges of the United States Supreme Court, . . . . Under the modern trend of authority, the courts holding otherwise, including, as we think, the Supreme Court of the United States, now rest their decision upon the well-known rule that *habeas corpus* is not the proper remedy to review errors, either of fact or law, that may occur in the trial of a criminal case: that, jurisdiction having been conferred, a criminal court is empowered to determine in the first instance the question whether a statute or ordinance, as the case may be, is violative of our organic laws, and that if any error intervenes in the decision of the trial court the defendant has a right of review in the appellate courts, where the question of unconstitutionality may again be passed upon and determined. It would seem that this is the sensible view. Otherwise an offender might keep the card of unconstitutionality up his sleeve and later play it by invoking the writ of *habeas corpus*. And this he might do not only after trial and conviction in the nisi prius court, but after full review in the appellate courts."

The jurisdiction to pass upon the constitutionality of an act of the legislature is inherent in the courts. It

is a power which can neither be conferred nor taken away by statute. To say that the courts have no power to pass upon the constitutionality of an act because it is void *ab initio* and confers no power upon the courts, would lead to the suspension of one of the most unquestionable and inherent powers and duties of the court. Such a situation would be absurdity compounded.[3] It is, of course, true that an unconstitutional act is void *ab initio* and is as though it never existed, but where a court of competent jurisdiction, before a statute has been declared to be unconstitutional, has rendered a judgment from which no appeal is taken, that judgment is effective and in full force: *State ex rel. Piel* v. *Arkansas Construction Co.* (1929), 201 Ind. 259, 167 N. E. 526, until it is set aside in a proper proceeding; *Gillie, Sheriff* v. *Fleming* (1922), 191 Ind. 444, 457, 133 N. E. 737.

What is meant by jurisdiction as the term is here used was clearly defined in *Yutze* v. *Copelan* (1923), 109 Ohio St. 171, 142 N. E. 33, 32 A. L. R. 1048 (affirming, (1923), 17 Ohio App. 461), *supra*, at pages 34 and 35 of 142 N. E., as follows:

"The proponents of the argument favoring invocation of the writ argue that the court is not clothed with jurisdiction if the statute is uncon-

---

3. "It has been repeatedly declared that an unconstitutional statute is a nullity, and that a decision attempting to enforce it is therefore void for lack of jurisdiction. Just what is meant by such a declaration is not quite clear. It surely does not mean that the court in such case cannot have jurisdiction to decide the question of constitutionality of a statute, because that is a judicial question of the highest class which the courts are expressly created to decide. Moreover a decision *against* the validity of a statute seems never to have been held or claimd to be void on the ground that the statute was a nullity. Therefore, unless we adopt the peculiar theory that the court has jurisdiction to decide right, but none to decide wrong, we are driven to the conclusion that a decision is not void for lack of jurisdiction merely because it decides that an unconstitutional statute is valid." 39 L.R.A. n. p. 454.

stitutional. But it seems to us that they overlook the usual and ordinary meaning of the term. 'Jurisdiction' is defined as the power to hear and determine. The court of first instance has power to hear and determine the law question as to whether the statute or the ordinance is constitutional or otherwise. If it is a civil case in which the unconstitutional feature of the statute is presented, there can be no doubt that the court had jurisdiction to determine its constitutionality, and a judgment in such case would not be subject to collateral attack. Indeed some of our courts announce the rule that conviction upon an unconstitutional statute cannot be inquired into in *habeas corpus*, because such proceeding is equivalent to a collateral attack upon a criminal judgment in a case wherein that question could have been or had been determined."

In *Shideler* v. *Vrljich* (1925), 195 Ind. 563, 145 N. E. 881, *supra*, which was an appeal from a judgment discharging the applicant on a writ of habeas corpus, this court, at page 568, said:

"Jurisdiction to hear and determine a matter includes power to make a decision and enter a judgment or order that will be binding until set aside or reversed, however erroneous it may be. 'Jurisdiction to decide gives power to decide wrong.' And one circuit or superior court has no supervisory power over the execution of process from another such court, and even if it had, a writ of habeas corpus is in no sense a writ of error."

The Elkhart Superior Court had the power to determine whether it did or did not have jurisdiction of the subject-matter, and its judgment, if conceded to be wrong, cannot be attacked collaterally in a habeas corpus proceeding. *Stone* v. *Elliott* (1914), 182 Ind. 454, 476, 106 N. E. 710; *Stephenson* v. *Daly* (1928), 200 Ind. 196, 158 N. E. 289, *supra*.

It is not here contended that the Elkhart Superior Court did not have general criminal jurisdiction, or that it did not have jurisdiction of the person of the appellee herein.

" 'A final judgment of a court of general jurisdiction, which has jurisdiction of the parties, is conclusive, and such a judgment can only be challenged as erroneous by an appeal, timely taken, to a reviewing court having jurisdiction to determine whether or not there is error.' "

*Todd* v. *State* (1951), 229 Ind. 664, 692, 101 N. E. 2d 45. See also: *Kunkel, Warden* v. *Moneyhon* (1938), 214 Ind. 606, 609, 17 N. E. 2d 82.

The judgment of the Elkhart Superior Court sentencing appellee to life imprisonment was a final judgment. It is not contended that such judgment is not valid on its face. The sole ground asserted in support of appellee's application for writ of habeas corpus is that the statute under which he was convicted and sentenced contravenes certain provisions of the state and federal constitutions.

The Elkhart Superior Court and the LaPorte Superior Court are courts of coordinate jurisdiction. This court has repeatedly held that a state court has no jurisdiction to examine or review a final judgment of another state court of coordinate jurisdiction regular on its face. Remedy for the invasion or denial of constitutional rights, state or federal, must be found in the court in which judgment was rendered, or in this court on appeal. *Slack* v. *Grigsby* (1951), 229 Ind. 335, 343, 97 N. E. 2d 145, and cases there cited.

If error was committed by the Elkhart Superior Court in sentencing appellee under an unconstitutional

statute, his remedy lies in that court in which he was tried and convicted, or in this court on appeal, and not by writ of habeas corpus. *Goodman* v. *Daly, Warden* (1929), 201 Ind. 332, 335, 165 N. E. 906, *supra; State ex rel. Dowd* v. *Superior Ct. of LaPorte Co.* (1941), 219 Ind. 17, 36 N. E. 2d 765; *Marks* v. *State* (1942), 220 Ind. 9, 40 N. E. 2d 108; *Detrich; Clark; Shoemaker* v. *Dowd, Warden* (1945), 223 Ind. 106, 108, 58 N. E. 2d 108; *State ex rel. Cook* v. *Howard, Warden* (1946), 223 Ind. 694, 699, 64 N. E. 2d 25.

To sustain his asserted right to test the constitutionality of the Habitual Criminal Act in an habeas corpus proceeding, appellee relies upon the majority rule as followed by the United States Supreme Court, and upon the Indiana cases of *Witte* v. *Dowd, Warden* (1952), 230 Ind. 485, 102 N. E. 2d 630; *State ex rel. Eggers* v. *Branaman* (1932), 204 Ind. 238, 183 N. E. 653; *Dowd, Warden* v. *Stuckey* (1943), 222 Ind. 100, 51 N. E. 2d 947; and a concurring opinion by Judge Martin in *Stephenson* v. *Daly* (1928), 200 Ind. 196, 202, 158 N. E. 289, *supra.*

The effect of *Witte* v. *Dowd, Warden, supra,* was explained in *Shoemaker* v. *Dowd, Warden* (1953), 232 Ind. 602, 115 N. E. 2d 443, *supra.* No question of proper procedure was involved in the Witte case and it has no application to the question under consideration in the case at bar.

While *Dowd, Warden* v. *Stuckey, supra,* involved the constitutionality of a statute, the *right* of appellee to test the constitutionality of the statute was not challenged. Hence, this case is not authority in support of appellee's position herein.

*State ex rel. Eggers* v. *Branaman, supra,* was an original action in which the relatrix sought a writ of

mandate to require the correction of a certain record of the trial court in order that such record might show invalidity on its face. The *right* to test the constitutionality of a statute in an habeas corpus proceeding was not present in that case, and the statement in the opinion upon which appellee herein relies is dicta which we are not constrained to follow.

We have no quarrel with the statement relied upon by appellee in the concurring opinion by Judge Martin in *Stephenson* v. *Daly, supra.* However, it has no application to the situation now before us and lends no support to appellee's contention.

Having decided that appellee has pursued the wrong remedy, we refrain from deciding the other questions presented.

The judgment of the LaPorte Circuit Court is reversed with instructions to grant appellant's motion for a new trial.

Judgment reversed with instructions.

Emmert, J. concurs in result.

Gilkison, J. dissents with opinion.

## DISSENTING OPINION

GILKISON, J.—I am in dissent with the majority opinion. Many of my reasons for this dissent are found in my dissenting opinion in the case of *Witte* v. *Dowd, Warden* (1951), 230 Ind. 485, 498, 102 N. E. 2d 630, 636, and therefore I make the dissenting opinion in the Witte case a part of my dissenting opinion in this case without restating it in full.

In addition to the reasons given in that dissent I call attention to the fact that Section 1 of Article 1 of the Constitution of Indiana provides as follows:

"§1, Natural Rights,—WE DECLARE, That all men are created equal; that they are endowed by their CREATOR with certain unalienable rights;

that among these are life, liberty and the pursuit of happiness; . . . ."

This section of our constitution is almost a paraphrase of the Declaration of Independence. To me it means that every person has the right of liberty coming to him directly from the Creator and this right, no government, no individual, no corporation, or other organization of mankind may take away from him, "otherwise than as for the punishment of crimes . . . ." Art. 1, §37, Ind. Constitution, Thirteenth Amendment, U. S. Constitution. It means also that no person can sell, barter, give away, or otherwise lose his right to liberty. Both of these propositions must be true if the right to liberty is an unalienable right. The majority opinion admits that the majority rule among the courts of our states and nation supports my position. It admits that in Indiana we are following the minority rule. It labors violently to show that there is some reason for the minority rule, notwithstanding the constitutional provisions noted. If the majority opinion is right, then there is a way in which an individual may alienate his unalienable Creator given right to liberty and that apparently is by waiver or non-user of the right. The right to individual liberty is a right in which the state and nation as well as the individual has an unalienable interest. This right cannot be lost by waiver or non-user. Either the state, nation or individual may assert this right whenever either may desire. No statute of limitations, waiver or latches can ever interpose to prevent the assertion of this right. The right to liberty cannot be waived. The action of habeas corpus has long been known as the "Writ of Liberty." It was the proper proceeding in this case. If the majority opinion is right, then the right to liberty is not only not unalienable but it may readily be lost by a failure to assert it when

challenged. In other words, the legal effect of the majority opinion is, that notwithstanding the state constitution and the United States Constitution to the contrary, in Indiana, liberty is not an unalienable right. It is alienable by waiver, or non-user.

I am wholly unable to follow this anomalous and highly unconstitutional principle.

The judgment of the trial court should be affirmed.

## ORDER

Comes now the Appellant in the above entitled cause by his attorneys and now files and presents his petition for immediate certification of the opinion and judgment of this court to the LaPorte Circuit Court in said cause, said petition being in the words and figures as follows, to-wit:

### (H. I.)

And the court having seen and examined said petition and being duly advised in the premises, finds that the opinion and judgment of this court should be certified immediately to the LaPorte Circuit Court.

It is therefore considered, adjudged and decreed by this court that the clerk of this court be and he is hereby commanded and directed to certify the opinion and judgment of this court in the above entitled cause to the LaPorte Circuit Court forthwith.

/s/ Floyd S. Draper
CHIEF JUSTICE

NOTE.—Reported in 116 N. E. 2d 108.